# CHARLESTON.

ROGERS, *et al. v.* ROGERS.

Submitted September 12, 1892.—Decided December 22, 1892.

| | |
|---|---|
| 37 | 407 |
| 40 | 656 |
| 37 | 407 |
| 42 | 369 |
| 37 | 407 |
| 44 | 728 |
| 45 | 96 |
| 37 | 407 |
| 48 | 455 |
| 48 | 468 |
| 48 | 594 |
| 37 | 407 |
| 49 | 132 |
| 49 | 133 |
| 49 | 184 |
| 50 | 504 |
| 37 | 407 |
| 51 | 411 |
| 37 | 407 |
| 54 | 101 |
| 37 | 407 |
| 56 | 599 |
| 37 | 407 |
| 66 | 310 |

1. RES JUDICATA.

An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto, and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the status of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata*. *Sayre's Adm'r* v. *Harpold*, 33 W. Va. 553 (11 S. E. Rep. 16). (p. 416.)

2. INJUNCTION—EVIDENCE.

Equity will restrain by injunction, not only the suit at law itself, but also the introduction of evidence in such suit, which, though perhaps legally admissible, is manifestly contrary to right and justice. (p. 420.)

3. DISMISSION—BAR.

Dismissal of a bill in equity upon the merits is a bar to further proceedings in the same court for the same purpose between the same parties; and this, too, though the court may not have gone into the evidence. (p. 418.)

LINN & HAMILTON and FLOURNOY & PRICE, for appellant cited 26 W. Va. 583; 94 U. S. 606; 24 How. 333; 5 Wall. 592; 9 Gratt. 454; 21 Gratt. 23; 14 W. Va. 406; 6 Cranch. 8; 9 Wheat. 740; 3 Rand. 505; 20 W. Va. 415; 24 W. Va. 763.

J. G. SCHILING, for appellees cited Hill. Inj. § 15, p. 249; Id. §§ 1, 1a, pp. 249–251; 3 Wait. 179; Id. 718; 35 Ga. 216; 32 W. Va. 34, p't 1, Syll. —.

ENGLISH, JUDGE:

This was a suit in equity brought in the Circuit Court of Calhoun county for the purpose of retaining and enjoining

one John Rogers from using a certain deed from one A. G. Bailey to him and others as evidence in an ejectment suit.

On the 19th day of February, 1890, Cynthia Ann Rogers, James W. Rogers, A. G. Bailey, Sophia P. Dye, and Wellington J. Rogers, the last named being an infant, who sued by Cynthia Ann Rogers, his next friend, presented their bill, verified by James W. Rogers, one of the plaintiffs, in which they allege, that on the 25th day of March, 1854, J. M. Bennett, commissioner, by deed conveyed to George W. Rogers a certain tract of land situated on Yellow creek, and being then in the county of Gilmer, but now in the county of Calhoun, containing two hundred acres, more or less, a certified copy of which deed was exhibited; that said George W. Rogers took possession of said tract of land, improved and cultivated the same, lived thereon, had it taxed to himself, and paid the taxes thereon up to the time of his death, which was some time in November, 1885;—that the plaintiff Cynthia Ann Rogers is the widow of George W. Rogers, and that the plaintiffs James W. Rogers, Sophia P. Dye, late Rogers, and Wellington J. Rogers are his children and heirs at law, and that these plaintiffs were in possession of the said tract of land at the time of said George W. Rogers's death, and have continued in possession thereof up to the present time;—that said George W. Rogers purchased said tract of land some years before the same was conveyed to him by said Commissioner Bennett's deed, and that he all the time, from the time of his purchase thereof until the time of his death, claimed the said land as his own;—and that the plaintiffs have always claimed the same as their own from the time of said Rogers's death, until the present time, and that they still claim the same as their own.

They further say, that at the April rules, 1886, of the Circuit Court of Calhoun county, the defendant, John Rogers, filed his bill against these plaintiffs, therein named as defendants, in which he alleged that the said George W. Rogers had, about the year 1840, purchased of S. G. Stalnaker a tract of two hundred acres of land, and that the same was conveyed to him by J. M. Bennett, commissioner,

by deed bearing date on the 25th day of March, 1854, which tract of land the plaintiffs say is the same tract of two hundred acres thereinbefore mentioned; and that said John Rogers further alleged in his said bill that, soon after the said purchase, it was agreed between him and the said George W. Rogers that they should together pay for the said land, and, when paid for, it should become their joint property; and that it was further alleged in said bill that a tract of seventy three acres of land and another tract of one hundred and eighty seven acres were purchased from Henry O. Middleton, and that the same were subsequently conveyed to said George W. Rogers by deed bearing date the 29th day of December, 1855; and that said bill further alleged that at the time of the purchase and of the said conveyance it was expressly agreed and understood, between the said John Rogers and the said George W. Rogers, that the said three parcels of land should be the joint property of both of them, and each of them should contribute equally to the payment of the purchase-money thereof; and that it was further alleged in said bill that, in pursuance of said agreement, the said John Rogers contributed and paid large sums of money on account of the purchase-money for said three parcels, and also cleared, fenced, and brought under cultivation one hundred acres on the seventy three-acre and two hundred-acre parcels; and that it was further alleged in said bill that on or about the —— day of ——, 1856, the said John Rogers and the said George W. Rogers agreed upon a partition between them of the said lands, whereby the said John Rogers was to have the aforesaid tract of seventy three acres, and that portion of the two hundred acres lying between Buck Suck and Hopkins runs, that portion and the seventy three acres making, as they supposed, about one hundred acres; and that it was further alleged that, pursuant to said agreement of partition the said John Rogers took immediate possession of that part so allotted to him, and had been in actual possession and control thereof, claiming the same openly and notoriously as his own, during which time he had made permanent, lasting and valuable improvements thereon, such as clearing and fencing, having cleared and fenced at

least fifteen acres thereof, and also having kept in order for
cultivation that part of said land so allotted to him as had
been previously cleared by him; and that it was further al-
leged in said bill that said John Rogers had paid to said
Henry O. Middleton, and furnished to said George W.
Rogers to be paid to said Middleton, large sums of money
to apply upon the purchase-money of said tracts of seventy
three and one hundred and eighty seven acres; and that it
was further alleged in said bill that on the 13th day of
April, 1858, the said tract of two hundred acres of land
was sold by E. F. Stout, sheriff of Gilmer county, under
and by virtue of an execution in favor of the common-
wealth of Virginia against James F. Norman, sheriff of
Calhoun county, and his securities, of whom the said
George W. Rogers was one, and that the same was pur-
chased by A. G. Bailey, who was one of the defendants in
said bill, to whom said tract of land was conveyed by the
said E. F. Stout by deed bearing date on the 14th day of
March, 1860; and that it was further alleged in said bill
that said Bailey purchased the said tract of two hundred
acres at four hundred and five dollars and that he agreed
with the said John Rogers and the said George W. Rogers,
that, if they would discharge the purchase-money for said
tract of land, for which he had executed his bond with
John B. Rogers and Dennis Dye, his sureties, he would
convey said land to them, and, in accordance with the agree-
ment of said Bailey, the said John Rogers and the said
George W. Rogers furnished the said Bailey with the full
amount of money necessary to relieve him from the obli-
gation of his said bond, but the said Bailey had not recon-
veyed the said tract of land; and that it was further alleged
in said bill that said John Rogers contributed and paid, on
account of the purchase-money on three parcels of land,
to the said Henry O. Middleton, sums of money sufficient
to pay all that was due from him on account of the land
so allotted to him in the partition aforesaid, and that said
George W. Rogers had frequently acknowledged that the
plaintiff had paid the full amount due from him on account
of the portion of land so assigned to him, and was entitled
to a deed for the same, and that he had frequently prom-

ised to make the said deed to the said John Rogers; and in the prayer to said bill the said John Rogers asked that the said defendant Bailey be required to execute and acknowledge for recordation, and file in said suit, a deed conveying to said John Rogers and the children and heirs at law of the said George W. Rogers, deceased, the said two hundred acres of land, and that a proper conveyance be executed to the said John Rogers for the seventy three acres aforesaid, and for general relief.

They further say that the said A. G. Bailey answered said bill that he was ready and willing to make a deed for the said two hundred acres under the direction of the court in said cause; and the plaintiffs further say that such proceedings were had in said cause of John Rogers against the plaintiffs, therein named as defendants, that on the 17th day of June, 1887, the said John Rogers's bill was dismissed, and the said John Rogers was decreed to pay the costs of said suit; and the plaintiffs pray that the papers of said chancery cause of John Rogers against the plaintiffs, therein named as defendants, and the proceedings of the court had thereon, be read as part of their bill.

The plaintiffs further allege that in contempt of the adjudication of the court, and in fraud of the rights of the plaintiffs, the said John Rogers after the said adjudication of the court and by misrepresentation and fraud procured the said A. G. Bailey without the knowledge or consent of the plaintiffs to make a deed to him, the said John Rogers, and to the plaintiffs, for said two hundred acres of land, and the said John Rogers, without the knowledge or consent of the plaintiffs, filed the same for record in the clerk's office of the County Court of Calhoun county.

Plaintiffs further allege that said John Rogers caused a declaration in ejectment for an undivided moiety of said two hundred acres of land to be served on the plaintiffs on the 4th day of May, 1888, and that he caused said declaration to be filed at the May rules, 1888, of the Circuit Court of Calhoun county; and that the said action of ejectment is pending and undetermined in said court, and that the said Rogers is prosecuting the same.

They further say that said John Rogers procured the

deed from said A. G. Bailey in the way and under the circumstances aforesaid, and that the same was fraudulently and corruptly procured and obtained, to the great injury of the plaintiffs; and a certified copy of said deed is exhibited.

They further say, that, after the said tract of two hundred acres of land was sold by E. F. Stout, sheriff, *etc.*, to said A. G. Bailey, as hereinbefore stated, said George W. Rogers furnished to said Bailey the means to pay off the purchase-money for the same, and that said John Rogers did not furnish any of the means to pay the purchase-money for said land, and that said John Rogers was not known in the contract between the said George W. Rogers and A. G. Bailey; that said deed from A. G. Bailey to John Rogers and others was voluntary, and not upon any consideration deemed valuable in law from said John Rogers.

They further say, upon information and belief, that the said deed from A. G. Bailey, to John Rogers and others constitutes the only claim that said John Rogers has to the said tract of two hundred acres of land, and that he has no other or different claim thereto on which he can maintain said action of ejectment; and they pray that said John Rogers be restrained from further prosecuting said action of ejectment, and that he be enjoined and restrained from using said deed from A. G. Bailey to him and others as evidence in said ejectment suit, and for general relief.

On the first Monday in June, 1890, the defendant, John Rogers, filed a general and special demurrer to the plaintiffs' bill, and also filed his answer thereto; and by way of special demurrer to said bill said defendant said, that it clearly appeared from the allegations thereof and the exhibits filed therewith, that the sole matter in controversy sought to be settled and adjudicated by the bill by him against the plaintiffs, who were defendants in that suit, was the right of the plaintiff to a specific execution of a parol contract for partition of the lands mentioned and described in the bills so filed by him, and the court did not affirm or negative the right of the plaintiff to an undivided one half interest in the two hundred acres of land described

in his action of ejectment, the prosecution of which is sought to be enjoined by the plaintiffs in this cause, and that he was not estopped from the prosecution or assertion of his right to the said tract of two hundred acres of land.

Said John Rogers, in answer to said bill, admits the conveyance by J. M. Bennett, commissioner, to George W. Rogers on the 25th day of March, 1854, of the tract of two hundred acres of land mentioned in plaintiffs' bill; also that A. G. Bailey became the purchaser of said two hundred acres at a sale thereof made by E. F. Stout, sheriff of Gilmer county, by virtue of an execution in favor of the commonwealth of Virginia against James N. Norman, sheriff of Calhoun county, and his sureties, the said George W. Rogers being one of his said sureties, which sale was consummated, and a deed for said land made by said E. F. Stout, sheriff, to said A. G. Bailey, on the 14th day of March, 1860; that at the time of said sale there existed an understanding and agreement between the said Bailey and the said George W. Rogers and respondent that said Bailey should purchase said two hundred acres of land in his own name, but should hold the same for and on behalf of the said George W. Rogers and respondent, they having furnished the money and funds with which the purchase-money to said Stout was paid, which facts were all recited in the answer of said Bailey to the bill filed by respondent and in the deed made by him to respondent and the heirs at law of George W. Rogers, deceased, dated on the 7th day of July, 1887, which is referred to in plaintiffs' bill in this cause, and the use of which is sought to be enjoined. Said deed also recites the fact that the bill filed by respondent as aforesaid had been dismissed by this court at its June term, 1887, and that the decree dismissing said bill failed to direct and provide for a conveyance by the said Bailey of the said land, but left the legal title thereof in him in all respects as it was before the institution of said suit; and that the said Bailey did not desire longer to hold the said legal title, but wished to comply with the original agreement and understanding existing between himself and the said George W. Rogers and respondent at the time of the purchase by him as aforesaid.

Said deed is exhibited, and the defendant alleges that the said Bailey and the other plaintiffs in the suit were thereby estopped from denying the allegations and recitals therein contained, and he pleads and relies upon said estoppel as a bar to the relief prayed for in the bill of the plaintiffs; and defendant alleges that the possession for said George W. Rogers of the said two hundred acres of land was, from and after the date of the purchase by said Bailey, subordinate to the rights of the said George W. Rogers and defendant under their agreement and understanding with said Bailey, and the assessment of taxes thereon and payment of the same in the name of said George W. Rogers, was likewise subordinate to said rights, and operated as well for the benefit of the defendant as the said George W. Rogers; but defendant denies that said George W. Rogers was in the exclusive or adverse possession of said two hundred acres of land, and denies that he in fact paid the taxes thereon, but alleges that while the assessment and payment of said taxes were in his name, yet this defendant in fact contributed of his own money and means to the payment of said taxes, and paid his due proportion thereof.

He also alleges that he was himself possessed of a part of said two hundred acres of land, as shown by the bill and proofs in the said cause instituted by this defendant as aforesaid. He admits the death of George W. Rogers, and that plaintiff Cynthia A. Rogers is his widow, and that James W. Rogers, Sophia P. Dye, and Wellington J. Rogers are his children and heirs at law, but denies that the plaintiffs were in possession of said land at the time of the death of said George W. Rogers, or that they have continued in possession thereof since the death of said George W. Rogers up to the time of the filing of their bill, but admits that they were in possession of part thereof. He also admits that said George W. Rogers did originally, and before the conveyance by Commissioner Bennett, purchase the said two hundred acres of land, but denies that, from the time of said purchase thereof until the time of his death, he claimed said land as his own. He, however, says that the plaintiffs, except the plaintiff Bailey, have claimed said

land since the death of said George W. Rogers, which claim, however, he alleges is unjust and inequitable.

A considerable portion of said answer consists of argument as to the legal effect of the facts and allegations presented by the record which is exhibited of the proceedings in the said suit brought by said John Rogers against the plaintiffs in this suit. The defendant, however, puts in issue the material allegations of the plaintiffs' bill.

No depositions were taken in the case, and on the 20th day of June, 1890, a decree was rendered therein, the cause being heard upon the bill and exhibits therewith filed upon the general and special demurrers of the defendant thereto, and upon his answer and the plaintiffs' general replication to said answer, and upon the papers and proceedings in the case of John Rogers against James W. Rogers and others, referred to in the plaintiffs' bill, upon consideration whereof the court overruled said general and special demurrers to plaintiffs' bill, and decreed that the defendant John Rogers be perpetually enjoined, inhibited, and restrained from using as evidence in the trial of the action of ejectment pending in the Circuit Court of Calhoun county, wherein the defendant, John Rogers, is plaintiff and Cynthia Ann Rogers and others are defendants, or any other action for the recovery of the lands mentioned therein, the deed from A. G. Bailey and wife to said John Rogers and the heirs of George W. Rogers, deceased, bearing date the 7th day of July, 1887, referred to and filed in the papers of this cause; and from this decree the said John Rogers obtained this appeal.

The object of this suit, as we have seen, is to restrain and enjoin the defendant, John Rogers from further prosecuting an action of ejectment against the heirs at law of George W. Rogers, deceased, for the recovery of an undivided moiety of a tract of land containing two hundred acres, which was conveyed to said George W. Rogers by J. M. Bennett by deed dated the 25th day of March, 1854, and to enjoin and restrain said John Rogers from using a deed from A. G. Bailey to him and others as evidence in said ejectment suit; and that the court, by the decree complained of, perpetually enjoins the use of said deed as evidence in said ejectment suit.

The first error relied on by the appellant is the action of the court in overruling the special demurrer, of appellant to the bill in said cause, in which special demurrer the said John Rogers claimed that the sole object of the bill of complaint which is made an exhibit in this cause, and the sole matter sought to be settled and adjudicated by the bill filed by said John Rogers against the plaintiffs, who were defendants in said suit, was the right of said John Rogers to a specific execution of a parol contract for partition of the lands mentioned and described in the bill so filed by said John Rogers, and the decree of court did not affirm or negative the right of said John Rogers to an undivided one half interest in the two hundred acres of land described in his action of ejectment, the prosecution of which is sought to be enjoined by the plaintiffs in this cause, and that said John Rogers is not estopped from the prosecution or assertion of his right to the said two hundred acres of land.

Now, it must be remembered that the suit in which said John Rogers was plaintiff and the suit which is now before us on appeal were between precisely the same parties, only in the one instance John Rogers was plaintiff and in the other he is defendant. Was the subject-matter the same in both suits?

It appears that George W. Rogers acquired a seventy three-acre tract and one hundred and eighty seven-acre tract from Henry O. Middleton, and a two hundred acre-tract from J. M. Bennett. In the bill filed by said John Rogers against heirs at law of George W. Rogers and A. G. Bailey, said John Rogers alleges that, at the time of the purchase from Henry O. Middleton of the seventy three and one hundred and eighty seven-acre tracts which were conveyed to George W. Rogers, it was expressly understood and agreed between him and the said George W. Rogers that the three parcels of land aforesaid should be the joint property of both of them, and each should contribute equally to the payment of the purchase-money therefor; that in the year 1856 he and said George W. Rogers agreed upon a partition between them of the lands aforesaid, whereby he was to have the seventy three-acre tract and a

portion of the two hundred acres aforesaid lying between Buck Luck and Hopkins runs, making as they supposed, one.hundred acres, and that he took immediate possession of the part allotted to him, and made lasting and valuable improvements thereon ; and the said John Rogers prayed that the defendant Bailey be required to execute, acknowledge in due form for recordation, and file in the cause, a deed conveying to him and the children and heirs at law of George W. Rogers, deceased, the two hundred acres of land aforesaid, to be held by them according to their respective rights as therein shown, so that he, plaintiff, might hold as his all that portion of the two hundred acres lying between Buck Luck and Hopkins runs and the seventy three acres aforesaid; and after a full hearing upon the pleadings and the evidence introduced by both parties the court decreed that the plaintiff was not entitled to the relief prayed for, and dismissed his bill; that is, that he was not entitled to have the said A. G. Bailey required to convey said two hundred acres, or any part thereof, to him.

Of this decree the said A. G. Bailey had full notice, for the reason that he was a party defendant to said suit, and filed his answer therein, and yet in about twenty days after said decree was rendered, denying to said John Rogers the relief prayed for, he executed and acknowledged a deed to the heirs at law of George W. Rogers and John Rogers for said two hundred acres of land, to be held, one moiety by the said John Rogers, and the other moiety by the heirs at law of George W. Rogers, which deed contains a number of recitals, among others, that at the time of said sale there existed an agreement, between said George W. and John Rogers and said Bailey, that the said Bailey should purchase said land and hold the same for and on behalf of the said John and George W. Rogers, they having furnished the money and funds with which the purchase-money was paid; but as said deed does not appear in any manner to have been accepted by the said heirs at law of George W. Rogers, it can not be regarded as affecting their interests in said two hundred acres of land in any manner.

Did the proceedings in said suit instituted by said John Rogers against said Bailey and said heirs at law and the

proceedings had and decree rendered therein operate as an estoppel upon said John Rogers as to the assertion of any right by a subsequent proceeding to share in or have allotted to him any portion of said two hundred-acre tract? We find that Bigelow on Estoppel (4th Ed., p. 54) says: "Dismissal of a bill in equity upon the merits is of course a bar to further proceedings in the same court for the same purpose, and this, too, though the court may not have gone into the evidence."

Now, what was the object of the bill filed by John Rogers? The only answer can be that one of the main objects was to obtain the legal title to a considerable portion of said two hundred-acre tract of land, and another object was to have said portion partitioned and set apart to him; but the court by its decree adjudged that he was not entitled to the relief prayed for. It is alleged in said injunction bill, and not denied in the answer, that said John Rogers on the 4th day of May, 1888, caused a declaration in ejectment for an undivided moiety of said two hundred acres of land to be served on the plaintiffs, which declaration was filed at May rules, which action of ejectment is pending and undetermined in said Circuit Court. Can this be regarded in any other light than a proceeding in the same court for the same purpose, to wit, the recovery of a portion of said two hundred acres of land, and between the same parties?

In the case of *Sayre's Adm'r* v. *Harpold*, 33 W. Va. 556 (11 S. E. Rep. 16) SNYDER, P., delivering the opinion of this Court, said: "It is well settled that an adjudication by the court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to any other matter which the parties might have litigated and had decided as incident to, or essentially connected with, the subject-matter, coming within the legitimate purview of the original action both in respect to the matters of claim and defence. It is not even essential that the matters should have been formally or distinctly put in issue in a former suit; it is sufficient if the *status* of the suit was such that the parties might have had the matters disposed of on its merits, if they had presented all their evidence, and the

court had properly understood the facts and correctly applied the law to the facts. If either party fails to present all his evidence, or mismanages his case, or afterwards discovers additional evidence, or if the court itself decides erroneously, nevertheless the judgment or decree, until vacated or corrected by appeal or in some other appropriate manner, is as conclusive upon the parties as though all such legitimate and incidental matters had been litigated, and the controversy settled in accordance with the principles of abstract justice. The mere fact that abstract justice has been defeated by reason of the negligence of the injured party or the erroneous rulings of the court will not impair the validity and conclusiveness of the judgment or decree. All such matters will be held to be *res judicata* in any subsequent litigation between the same parties. *Corrothers* v. *Sargent*, 20 W. Va. 351; *Tracey* v. *Shumate*, 22 W. Va. 475; *McCoy* v. *McCoy*, 29 W. Va. 794 (2 S. E. Rep. 809).

In the case of *Tracey* v. *Shumate*, *supra*, GREEN, J., delivering the opinion of the Court, quotes from *Harris* v. *Harris*, 36 Barb. 88: "An adjudication is final and conclusive, not only as to the matters determined, but as to every other matter which the parties might have litigated and have decided as incident to or essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to the matters of claim and of defence."

He says: "It is not essential, that the matters should have been distinctly put in issue in a former suit to make it an estoppel. It is sufficient if it be shown to have been tried and settled in a former suit. The force of a judgment as *res adjudicata* can not be destroyed or impaired by showing that it is clearly erroneous and ought not to have been rendered. *Case* v. *Beauregard*, 101 U. S. 688."

Again he says: "It is true that a judgment or decree, to be an estoppel, must be a judgment or decree upon the merits; but by a decree upon the merits is not meant 'on the merits' in the moral sense of those words. It is sufficient that the *status* of the suit was such that the parties might have had their suit disposed of on its merits if they

had presented all their evidence, and the court had properly understood the facts, and correctly applied the law to the facts. *Hughes* v. *U. S.*, 4 Wall. 232.

Applying these principles to the case under consideration, there was nothing to prevent John Rogers, the plaintiff in the partition suit, from showing that he paid a portion of the purchase-money to A. G. Bailey for the two hundred acres of land; and although his deposition was taken, he does not show that he paid one dollar of the purchase-money for said tract, and no other witness shows that he paid any part of said purchase-money. A. G. Bailey, who filed his answer in the case, and who recites in his deed that said purchase-money was paid him by George W. and John Rogers, or that they furnished the money and funds with which the purchase-money was paid, was not examined as a witness, as he might have been, to prove said fact. When said land was sold for George W. Rogers's liability as surety, said John Rogers claimed the seventy three acres, but he asserted no claim to the two hundred acres. The unsworn answer of A. G. Bailey was no evidence against his codefendants, and, notwithstanding it is apparent that the said John Rogers might have strengthened his case by his own testimony and by other witnesses, it is equally manifest that the case was decided upon its merits.

And as to the question as to whether the said John Rogers was entitled to any portion of said two hundred acres, or to have the same partitioned and set apart to him, it must be regarded as *res adjudicata;* and upon the question as to whether the court below acted properly in restraining the introduction of the deed from said A. G. Bailey in the action of ejectment, and from further prosecuting said action of ejectment, see Hill, Inj. p. 260, § 15, where it is said: "Equity will restrain by injunction, not only the suit at law itself, but also the introduction of evidence in such suit which, though perhaps legally admissible, is manifestly contrary to right and justice." See, also, 3 Wait, Act. & Def. p. 179, § 12; also *Id.* p. 718, § 1, where it is said: "Whenever a spurious deed or instrument, valid on its face, and capable of a vexatious use after the means of

defence are lost or impaired, or is in any way calculated to throw a cloud upon the title, is outstanding, a court of equity will entertain a suit to compel its delivery and cancellation, and will also grant an injunction restraining any proceeding based upon or transfer of such instrument before judgment" See, also, *Webb* v. *Wynn*, 35 Ga. 216.

For these reasons,.applying these rulings to the facts and circumstances developed in this case, I am of opinion that there is no error in the decree complained of, and the same must be affirmed, with costs and damages to the appellees.

AFFIRMED.