# CHARLESTON.

## BROWN *v.* SQUIRES' ADM'R *et al.*

Submitted June 11, 1896—Decided Nov. 21, 1896.

*Res Adjudicata*—ESTOPPEL.

A former adjudication, in a suit brought for that purpose alone, that the language, in a conveyance of real estate, "The said grantors to have their life maintenance out of the following described land or its proceeds," does not create a specific lien or charge on the land, will not estop the grantors in such conveyance from setting up a personal claim for such maintenance against the grantees or their estates, when such question was in no wise involved in or adjudicated in such former suit.

JAS. A. BROWN and BROWN & HYDE for appellants, cited 39 W. Va. 579.

N. J. FORTNEY and P. J. CROGAN for appellees, cited 30 W. Va. 1; 39 W. Va. 579; 26 W. Va. 583; 20 W. Va. 351; 33 W. Va. 553; 38 W. Va. 407.

DENT, JUDGE:

On the 8th day of April, 1882, Benjamin F. Squires and Elizabeth, his wife, executed a deed conveying two hundred and forty nine acres of land to their two sons, Reuben B. Squires and Benjamin M. Squires, in consideration of seven hundred dollars and the "grantors to have their life maintenance out of the land or its proceeds."

Benjamin M. Squires dying intestate, the grantors filed a bill in chancery in the Circuit Court of Preston county, wherein the land lay, alleging that the administrator, widow, and children of the decedent, after his death, had neglected and refused to contribute to the support of the grantors in accordance with the provisions of the deed, and were selling the timber off of and rendering the land valueless; that grantor's maintenance was by the terms of the deed made a charge or lien thereon; and praying that the value of such maintenance might be ascertained, the cutting of the timber stopped, the land sold, and the proceeds applied to the payment of such maintenance. The defendants demurred to this bill, and on the 17th day of December, 1891, the court sustained the demurrer and dismissed the bill, holding that the grantors did not have a lien on the land by virtue of their deed, and were not entitled to stay the cutting or removal of the timber. No appeal was taken from this decree.

In December, 1892, Margaret P. Brown filed a general creditors' bill against the administrator, widow, heirs, and other creditors of B. M. Squires, deceased, to which she made the grantors in the deed in controversy (now here appellants) parties defendant. They filed their answer, in which, among other things, they set out their claim as follows, to wit: "That by virtue of the liability embodied in said deed of April, 1882, the estate of said B. M. Squires is liable for one half of the maintenance of these respondents. Your respondents therefore allege that the estate of Benjamin M. Squires, deceased, is indebted to the defendant B. F. Squires and his wife, Elizabeth Squires, in an amount equal to one half of the maintenance of the said Benjamin F. Squires and of the said Elizabeth Squires, which said maintenance was part of the consideration named in the

deed above referred to, and is a proper charge against the whole estate of the said Benjamin M. Squires, deceased." And they asked, affirmatively, that one half their necessary maintenance be decreed against the estate of B. M. Squires, deceased. The administrator and widow of decedent filed a special reply to this answer, pleading the decree in the former suit as *res adjudicata*. The cause was referred to a commissioner, who reported adversely as to the claim of the appellants. They excepted. On a hearing of the cause the court overruled the exception, and dismissed the answer, at the cost of respondents. From this decree they appeal.

In the meantime the court proceeded to sell a certain house and lot, the property of the decedent, to satisfy plaintiff's debt, which was a special lien thereon. The sale was made and confirmed without objection, and there is no attempt on this appeal to disturb the same; hence, to that extent, the decree must stand.

The law is that "an adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated, as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the status of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res adjudicata*." *Rogers* v. *Rogers*, 37 W. Va. 407 (16 S. E. 633); *Sayre's Adm'r* v. *Harpold*, 33 W. Va. 553 (11 S. E. 16). By the decree of the 17th day of December, 1891, the circuit court adjudicated that the plaintiffs in the bill could not charge their maintenance on the moiety of the land deeded to B. M. Squires—that it was neither a lien nor a charge against the same; in effect holding that the language of the deed, to wit, "grantors to have their life maintenance out of the land, or its proceeds," was a mere recital of the consideration, and did not bind the land, and that the only claim for support was a personal one against the grantees. This ad-

judication, however mistaken or erroneous, has become *res adjudicata* as between the parties. The appellants might have converted their bill, filed for a specific purpose, into a general creditors' bill, had they seen fit to do so, but they abandoned further litigation at this time. When the creditors' bill was filed, they set up a general claim for their maintenance against the estate of the decedent, based on the terms of their deed. This was a question which was not in controversy in the former suit, either by the allegations of the bill or in any other way. In determining, however, that the terms of the deed did not create a charge or a lien on the land specifically, the court incidentally and necessarily must have held that the consideration, the life maintenance out of the land or the proceeds, was a personal obligation or trust against the grantee in the deed. The use of the words "or its proceeds" unquestionably shows that it was the intention of the parties that the grantees might sell the land, and from the proceeds thereof supply the necessary maintenance for the grantors; thus making a personal obligation on the grantees to furnish the support not in excess of such proceeds, and thereby limiting, if at all, the obligation to this extent. If there was any doubt as to this being the true meaning of the language used, it is set at rest by the testimony of Reuben B. Squires, the surviving grantee in the deed, who testifies: "The contract was that we were to maintain the old folks for the farm. We were to pay off this indebtedness, and take the farm, and maintain them hereafter for the farm." This evidence is objected to as incompetent, but there is no sufficient reason shown therefor. It does not contradict, but is simply an explanation of, the deed. The witness is not incompetent, for he is not testifying as to any transaction or communication had between himself and the deceased, but as to a contract had between the deceased and a third party, to which he was a party on the side of and with interest therein not against, but in common with, deceased. And the former adjudication was in accord with, and not against, the testimony. In short, this case is that the grantors deeded their land to their two sons in consideration of their support, to the extent, at

least, of the proceeds or value of the land, which was deemed amply sufficient. After selling the timber one of the grantees dies. His administrator, widow, and heirs, although his estate has been enhanced to the extent of the timber, refuse to comply with his contract. The grantors thereupon have to become indebted to others to the amount of such refusal, and to make good this indebtedness they set up a claim against the deceased grantee's estate, including the land conveyed by them. The circuit court refuses to entertain them, on what theory it is impossible to perceive. Having decided, formerly, that they had no right to charge the land specifically, it now holds that they have no right to enforce the consideration as a personal obligation. There is some pretense that the grantors' pleadings were not sufficient for this purpose. This is a general creditors' bill, and any person having a claim against the estate has the right to produce it, with his evidence, with or without pleadings, and have it adjudicated; and either actual or constructive notice may bar him of participation in the proceeds of such estate. The grantors' answer, as evidenced by the extract heretofore given, was sufficient, if any was needed.

For the foregoing reasons, the decree, to the extent that it disallows appellants' claim for maintenance, is reversed; the exception to the commissioner's report in relation thereto is sustained; and this cause is remanded to the circuit court, with direction to ascertain the value of the maintenance of the appellants for which the estate of Benjamin M. Squires is liable, and, unless the same is otherwise provided for, to subject the real estate to sale, and, out of the proceeds, make proper provision for the payment of such maintenance, and to be further proceeded in according to the rules of equity. Costs to be adjudged against the estate of Benjamin M. Squires, deceased, in the hands of his administrator, M. C. Feather, to be administered.