# CHARLESTON.

STATE *v.* McELDOWNEY.

Submitted September 3, 1903—Decided February 9, 1904.

1. DELINQUENT LAND—*Sale.*
    The failure to return a list of delinquent lands sold for taxes by the first Monday in June is not, under chapter 31, section 25, Code 1899, ground for setting aside a sale, either to the state or an individual. The defect is cured by that section. Expressions to the contrary in *McGee* v. *Sampselle*, 47 W. Va. 352, disapproved. (p. 698).

2. DELINQUENT LAND—*Tax Sale.*
    The curative provisions as to tax sales in section 25, chapter 31, Code 1899, apply to purchases by the state of land sold for taxes. Point 3 of the syllabus in *McGee* v. *Sampselle*, 47 W. Va. 352, to the contrary, is overruled. (p. 698).

3. DELINQUENT LAND—*Tax Sale.*
    A sale for delinquent taxes of land purchased by the state for taxes for a year previous to the year for the taxes of which the land is sold to an individual is illegal and void, and a deed under such sale is void. (p. 699).

4. FORMER DECREE—*Res Judicata.*
    To render a former decree a bar as *res judicata*, in a second suit about the same matter, not mere matter of defense, the

matter of the second suit must have been actually in issue in the first. The pleadings of the first suit must be such that the party could have proven and had it passed on. (p. 699).

5.  BILL—*Decree.*

    Where a bill in a suit does not present facts which call for relief, and it is dismissed, the decree will not bar a subsequent bill on the same cause of action, which states additional or other facts not in the first bill, which make the second bill good, for the same relief called for in the first suit. (p. 700).

6.  BILL—*Decree—Dismissal.*

    If a material fact touching a matter of controversy is such that it must be stated in a bill, a decree dismissing a bill not stating it will not bar a second bill properly stating such fact. (p. 701).

7.  FORMER DECREE.

    To render a former decree a bar to a second suit the demand must not only be the same, but the cause of that demand must be the same. (p. 701).

8.  FORMER SUIT.

    Where the record leads to the ground of decision, that decision is no farther a bar to a second suit than as to that ground, except as to defenses which the party is bound to plead. (p. 701).

9.  TAX SALE—*Defective Title.*

    A bill to set aside a tax deed for defects in the proceedings under which it was sold must point out those defects. (p. 702).

10. TAX SALE—*Defective Title.*

    Where a tax deed is set aside by decree, not for a mistake or irregu'arity in the record of the proceedings under which it was sold, referred to in section 25, chapter 31, Code 1899, but because the sale was unauthorized by law, and so the deed void, the former owner suing to clear his title of such deed will not be required to repay the tax purchaser his outlay in his purchase or taxes paid by him. (p. 703).

Appeal from Circuit Court, Wetzel County.

Action by the state against John C. McEldowney and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

W. N. MILLER, R. F. FLEMING, and B. T. BOWERS, for the State.

E. B. SNODGRASS, for appellees.

BRANNON, JUDGE:

Levi Shuman was taxed with a lot of land on which is a mill in Wetzel county for the year 1890, and it was sold for delinquency for said tax in 1891 and purchased by the state. It was again taxed for the year 1891, returned delinquent, sold for such taxes in 1893 and purchased by John C. McEldowney, who obtained a deed under such tax sale. The lot was sold from Shuman under a decree for purchase money and purchased in June, 1891, by Cassie L. Nuzum, and it was conveyed to her under such judicial sale 14th November, 1891. Mrs. Nuzum attacked McEldowney's tax purchase by a suit in Wetzel county to set it aside for irregularity in the tax sale; but her suit was decided against her by this Court, as will be seen in 46 W. Va. 207. After this the State of West Virginia, claiming that the said lot was vested in it under its said tax purchase, in a chancery suit in the circuit court of Wetzel county, sought to sell the lot for the benefit of the school fund. The bill in this suit made McEldowney a defendant, set up his said tax title, alleged the invalidity of the tax sale to him and sought to set it aside as null and void. The bill also made Mrs. Nuzum a defendant, alleging that she had acquired the lot under said judicial sale. McEldowney answered this bill relying upon his tax title. Mrs. Nuzum filed an answer in the nature of a cross bill attacking and seeking to annul McEldowney's tax deed as void, and admitting the right of the state, and offering to redeem the land under the statute by payment to the state of the requisite amount. McEldowney answered and resisted the relief sought by Mrs. Nuzum in her answer. Upon the hearing a decree was pronounced declaring the state's purchase for taxes was void, but declaring the taxes a lien on the lot, and allowing McEldowney to remove the lien by the payment, and dismissing the state suit, and holding valid McEldowney's tax deed, and refusing to set it aside as prayed by Mrs. Nuzum in her answer, and dismissing that answer. From this decree Mrs. Nuzum took an appeal.

Take the case as between the State and McEldowney. The state attacks McEldowney's deed for irregularity, and he attacks the state's purchase for taxes. McEldowney says that the state's purchase is invalid by reason of the fact that the delinquent list under which the sale to the State was made was

not returned until 27th July, 1901, when the law required it to be returned by the first Monday in June, and according to *Mc-Gee v. Sampselle,* 47 W. Va. 352, holding this would render the State's purchase, bad, and that the curative provisions of section 25, chapter 31, Code 1899, (chapter 130, Acts 1882) do not apply to heal defects in purchases by the state, the sale to the state would be void. The Court now disapproves and overrules such holdings of that case. We hold that such curative provisions apply to purchases by the state the same as to individual tax deeds. Section 32 says that the state purchases shall be listed and that "all such estate, right, title and interest * * as would have vested in an individual purchaser shall be by the sale and purchase on behalf of the state vested in the State without deed." Why does not this give the state right to the cure of the statute? Really the case of *McGee* v. *Sampselle* as to this point is *obiter,* as the trees were not owned by Nancy Brown, and not taxable in her name. It was not necessary to pass on the tax deed to decide the case.

We further hold that the fact that the delinquent list was not returned within the time specified by law does not render the state's purchase void, and this because section 25, chapter 31, Code 1899, says that "no irregularity, error or mistake in the delinquent list, or the return thereof, or in the affidavit thereto, * * * shall, after the deed is made, invalidate the sale or deed." Of course, the state title is subject to redemption by a party entitled to redeem. In this case the state is entitled to a decree to sell the lot on failure of redemption.

As between McEldowney and Mrs. Nuzum. She says in her answer that McEldowney's tax deed is void for the reason that the delinquent list was not returned by the first Monday in June, 1892, and not until 25th July. This defect is cured by provisions in Code 1899, chapter 31, as just stated. Mrs. Nuzum's answer charges that as the lot was sold to the state for taxes for 1890, the assessment for 1891 was contrary to law, for the reason that chapter 31, Code 1899, prohibits its assessment while it is vested in the state until it is redeemed. This point cannot prevail, because on 1st April, 1891, Shuman was still owner and the assessment relates to that date, and the delinquent list was not returned until July, and the state did not purchase until 14th December, 1891. But there is another ob-

jection to the sale to McEldowney. It is that he purchased for taxes in December, 1893, and before that the fact that the lot had been sold to the state was apparent in the Auditor's office, and the Code of 1899, chapter 31, section 4, directs him to send out for sale lists of land delinquent for taxes "not previously sold therefor", and does not allow him to send out for sale lands owned by the state by tax purchase. There was no law allowing the Auditor to send out this lot for sale in 1893, because it was state property, and there was no law to authorize its sale, and that sale was simply void. Section 23, chapter 29, Code 1899, forbids the assessment of land vested in the state by tax sale, and the two statutes plainly make such sale to McEldowney illegal. *Totten* v. *Nighbert,* 41 W. Va. 800, so holds. There is no provision of law curing this void sale. A question arose with me whether the answer specifies this vice in the sale. It does not clearly do so; but it states the fact of the sale and that it was not redeemed, and that it was for 1891 charged and was delinquent for taxes for that year and sold to McEldowney therefor, and that the sale was void. Under these facts it results, as matter of law, that the auditor did send out and the sheriff sold the lot without authority of law, and we think the answer may be regarded as sufficient to present this defect.

After preparing this opinion I notice that in *Sayers* v. *Burkhart,* 85 Fed. 246, the Circuit Court of Appeals, in an opinion by JUDGE GOFF holds that it is against law to assess land purchased by the state. It thence plainly follows that the assessment and sale are void.

But McEldowney pleads that the decree of this Court upon the bill of Mrs. Nuzum against him is a bar to any relief upon her said answer in this suit, as *res judicata.* In the former suit Mrs. Nuzum's bill assailed McEldowney's tax deed on certain grounds, namely; defect in the sheriff's affidavit to the sales list and defect in the heading of the list; but did not impeach the deed on the ground that there was no authority to sell by reason of the fact that the land was vested in the state under its purchase for taxes: the fact that it had been purchased by the state for taxes before 1891 was not mentioned in the pleadings, and was not in issue, and therefore the decree is no bar as to this. A judgment will bar "only upon the matter actually at issue and determined in the original action; and such matter

when not disclosed by the pleadings must be shown by extrinsic evidence." *Davis* v. *Brown*, 94 U. S. 23. It must have been directly in issue. *Western Mining Co.* v. *Va. Canal Co.*, 10 W. Va. 215; *Doonan* v. *Glynn*, 28 *Id.* 715; *Cleaton* v. *Chambliss* 6 Rand. 86; 1 Greenl. Ev. 528.

It is old law oft repeated that estoppels are odious because they shut out the truth. We cannot say that this is applied, in the same sense as once it was; but we can say that the principle yet prevails to deny the right to bar matters never in fact involved in a former trial, at least where it was not admissible under the pleadings. I do not forget the rule given by many cases, among them *Biern* v. *Ray*, 49 W. Va. 129, that a judgment or decree upon the merits is a bar or estoppel upon the same demand, not only as to every matter which was offered and received to sustain or defeat the claim, but also any other "admissible matter" which might have been used for that purpose: This has reference to evidence. But notice the rule says "admissible matter." Was this matter that the lot had been purchased by the state, and therefore was unlawfully sent out for sale by the auditor and sold by the sheriff in December, 1893, admissible on Mrs. Nuzum's bill? It was not mentioned in that bill, nor in the cause. The bill of Mrs. Nuzum did make the general charge that the tax sale was irregular and void, specifying as grounds only certain facts, they being that there was property on the lot out of which the tax could have been made; that the affidavit to the sales list had specific defects; and that the heading of that list was not such as the law required. There was no mention of the sale to the state, or of illegality of the sale to McEldowney for that reason. This important fact was omitted from the bill. The bill was held not sufficient to avoid McEldowney's deed; but it did not hold that a bill with that in it was insufficient. True, gravamen or demand of suit is the same in both the original bill in Mrs. Nuzum's suit, and in her answer in this suit, the demand that the tax deed be held invalid; but the cause for so holding is not the same; the facts touching it are not the same. To bar, the demand must be the same, and the cause of that demand the same. 7 Rob. Prac. 160. It is just the case of one declaration wanting facts essential to recovery, and a second declaration for the same cause of action giving additional facts making the case good. Often has it been held that

a judgment on the first declaration on demurrer or verdict does not bar the second suit. "If the plaintiff fails on demurrer in his first action from the omission of an essential allegation in his declaration, which is supplied in the second suit, the judgment in the first suit is not a bar to the second." *Gould* v. *Evansville Co.,* 91 U. S. 256. "A judgment that a declaration is bad in substance, (which alone, and not matter of form, is the ground of general demurrer) can never be pleaded as a bar to a good declaration for the same cause of action. The judgment is in no just sense a judgment on the merits." *Gillman* v. *Rives.* 10 Peters 298; Biglow on Estop. 53. As Judge Carr said in *Cleaton* v. *Chambliss,* 6 Rand. 86, the record must show that issue was taken on the same allegation. In this case the record is the only test. There is no possibility that the decree was upon any ground or reason than that manifested by the record. If a case is dismissed on demurrer, the decision is that the facts do not call for relief. So, though the case is not so dismissed, but judgment for defendant is on verdict, yet if the facts in the declaration show that no recovery could be had, why shall it bar a second declaration giving more facts touching cause of action, which call for relief? The record shows on just what facts the first decree went. Where the record leads to the ground of decision it is no farther a bar than as to that ground; for that is all that has been decided, and so, no farther, it is a bar." In *Sanderson* v. *Marshall,* 1 H. & M. 458. "To bar" it must appear, either upon the face of the record, or be shown by extrinsic evidence, that the precise question was raised and determined." *Russell* v. *Place,* 94 U. S. 606; *Puckel Co.* v. *Sickel,* 5 Wall. 580. It does not in this case necessarily appear that the same matter was decided, but that it was not. *McCoy* v. *McCoy,* 29 W. Va. 794. The same evidence to support the issue raised by the record in the first suit does not support that raised in this suit. Proof of the state's purchase had nothing to do with the defects presented in the first suit; nor would the evidence to show those defects presented in the first suit bear on the defect presented in this suit. This is a test. 24 Am. & Eng. Enc. L. (2nd ed.) 781.

To constitute a judgment in the former, a bar in the latter action it must be shown that the plaintiff could, but for his fault, have recovered in the former action. 7 Rob. Prac. 170.

Mrs. Nuzum could not have presented in her own suit the fact that the land had before been sold to the state, because her bill did not state that fact. It did charge that the sale and deed were illegal, but only stated certain facts to show it. A pleading must have certainty; must state facts to build up and sustain the demand, the relief asked. "The bill should state the plaintiff's case with reasonable certainty—that is, the right he claims, the injury complained of and the relief he asks with the facts to justify it—with such accuracy and clearness, and with such detail of essential circumstances of time, place and manner as will make his case, so as to inform the defendant of what he has to meet; stating, not conclusions of law, but the facts out of which arises his right to some specified relief." *Zell Co.* v. *Heatherly,* 38 W. Va. 409. For instance, a bill to annul a deed for fraud must specify facts constituting the fraud. Same case. A bill to avoid a fraudulent conveyance must state facts entering into the fraud, a general charge not being enough. *Vance Shoe Co.* v. *Haught,* 41 W. Va. 275; *Billingsley* v. *Menear,* 44 *Id.* 651. And specifically as to tax sales, Blackwell on Tax Titles, section 1084, says: "An averment that the proceedings of the officer were regular, legal, etc., is a mere legal conclusion, without giving the facts from which that conclusion is drawn. Therefore, in all such cases the pleader must show with reasonable certainty the particular facts upon which the regularity or legality of the proceeding depends." If such the law in pleading a tax-title, it must be equally so in assaulting it. Where there is no pleading, there can be no recovery. Allegation and proof must correspond. *Riley* v. *Jarvis,* 43 W. Va. 43. Every fact necessary to make out a case must be positively and certainly alleged as the court bases its decree upon allegations. *Hood* v. *Morgan,* 47 W. Va. 817. The plea of *res judicata* applies to every objection urged in a second suit, when the same objection was open to the party within the legitimate scope of the pleadings in a former one, and might have been presented in it." *Aurora City* v. *West,* 7 Wall. 82. Her bill did not charge the fact. Therefore Mrs. Nuzum could not have proven or gotten relief from the fact that the lot had been sold to the state, and she is not barred by the first decree. But when a party is sued he must put in all his defenses, else he is barred of any defenses omitted because he could have presented them,

2 Am. & Eng. Ency. L. (2nd ed.) 782; *Biern* v. *Ray*, 49 W. Va. 129. "A recovery by the plaintiff necessarily adjudicates that there is no defense. Hence the cases all agree that a judgment bars all defenses which the defendant had opportunity to make." Van Fleet, Former Adjud. section 159. But not so with the plaintiff. He may file a declaration, and if its facts do not call for judgment, and he loses, he may try again upon facts which do so. He ought to have put all facts in at first, but not doing so, what the result? He is not barred by *res judicata* as his second case, differing from the first, has never been tried.

Mrs. Nuzum did not in her bill offer to repay McEldowney the purchase money and taxes paid by him. Where a defect on the record in the proceeding in which a tax deed originates is such, as to justify a court in setting it aside on bill, chapter 31, section 25, requires the former owner before relief to repay the purchaser the money therein prescribed. That is generally the case; the bill must tender and bring in the money. *McClain* v. *Ballou*, 50 W. Va. 121. But the vice in McEldowney's title is not a mere "irregularity in the proceedings under which the same was sold," and the Code does not require such repayment except where the irregularity appears in the record *under which* the tax deed is made. Here the fact that the lot had been before sold to the state did not appear in that record, but only the delinquent and sale list; it was not apparent in that record. And it is not a mere "irregularity" in that record. It is a fact making the deed void, not voidable; the *sale* was unauthorized by, and against law; it was a nullity.

Therefore, Mrs. Nuzum is not required to refund to McEldowney; but she, not McEldowney, must pay the State what is going to it to redeem the title from the state, and McEldowney has right to withdraw the money which he paid into the court for that purpose.

Our conclusion is to reverse the decree of 13th June, 1901, and remand the cause with direction to the circuit court to enter a decree canceling and setting aside the deed made January 9, 1895, by Henry R. Thompson, clerk, to John C. McEldowney, and allowing Cassie C. Nuzum to redeem her title from the State by payment of the proper sum, and in default of such payment selling the lot upon the State's bill.

*Reversed.*